**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **LONE STAR SCM SYSTEMS, LTD.** | **CIVIL ACTION NO.: 6:21-cv-842** |
| **Plaintiff,** | |
| **v.** | |
| **ZEBRA TECHNOLOGIES CORPORATION** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Lone Star SCM Systems, Ltd. files its Complaint against Zebra Technologies Corporation for infringing U.S. Patent Nos. 7,557,711 ("the '711 Patent"), 9,646,182 ("the '182 Patent"), 9,996,717 ("the '717 Patent") and 10,482,293 ("the '293 Patent") (collectively the "Asserted Patents"), demands a trial by jury and alleges as follows:

## PARTIES

1.      Plaintiff Lone Star SCM Systems, Ltd. ("Lone Star" or "Plaintiff") is a Texas limited partnership with a principal address of 4555 Excel Parkway, Suite 500, Addison, Texas 75001.

2.      Defendant Zebra Technologies Corporation ("Zebra" or "Defendant") is a corporation organized and existing under the laws of the State of Illinois with its principal place of business at 105 Challenger Road Ridgefield Park, NJ 07660. Zebra operates a 26,000 square foot facility in the Western District of Texas at 507 W Howard Ln Suite 100, Austin, TX 78753. Zebra has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its agent for service of process. Zebra regularly conducts and transacts business in Texas, throughout the

1

United States, and within the Western District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

3.      Zebra Technologies Corporation and its foreign and United States subsidiaries, affiliates, and related companies ("Zebra and its affiliates") comprise one of the world's largest manufacturers and sellers of marking, tracking, and printing technologies, including under the Zebra brand.

4.      Zebra and its affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices in the United States, including in the State of Texas generally and this judicial district in particular.

5.      Zebra and its affiliates share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.

6.      Zebra and its affiliates regularly contract with customers regarding equipment or services that will be provided by their affiliates on their behalf.

7.      Thus, Zebra and its affiliates operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

## JURISDICTION AND VENUE

8.      This action arises under the Patent Laws of the United States, namely, 35 U.S.C. §§ 1 et seq.  This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      Venue is further proper because Zebra has committed and continues to commit acts of patent infringement in this district, including making, using, offering to sell,

and/or selling Zebra RFID products ("Accused Products"), including, but not limited to, the MC33XX Series RFID products in this district, and/or importing Accused Products into this district, including by Internet sales and sales via resellers, distributors, and other channels, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein in this district.



Source:  https://www.zebra.com/us/en/products/spec-sheets/mobile-computers/handheld/mc3300.html

10.    Zebra is registered with the Texas Secretary of State to do business in Texas.  Zebra has regular and established places of business in this district, including at least at 14000 Summit Dr. #900, Austin, Texas 78728, as Zebra has admitted in prior litigation, and at 507 E Howard Lane, Bldg 1, Austin, Texas 78753 as shown in the below screenshots:



(Source: https://www.zebra.com/us/en/about-zebra/contact-zebra/global-locations.html)

11.     Zebra has business property located in Travis County, Texas that is currently appraised by the county tax authorities at approximately $795,000.



(Source: screenshot from Travis County Appraisal District website)

12.     Zebra is subject to this Court's general and specific personal jurisdiction because Zebra has at least minimum contacts within the State of Texas and the Western District of Texas and, pursuant to due process and/or the Texas Long Arm Statute, Zebra has purposefully availed itself of the privileges of conducting business in the State of

Texas and in the Western District of Texas.  Further, Zebra regularly conducts and solicits business within the State of Texas and within the Western District of Texas.  Finally, Lone Star's causes of action arise directly from Zebra's business contacts and other activities in the State of Texas and in the Western District of Texas.

## BACKGROUND

### A.  John Volpi's Legacy of Innovation

13.     John Volpi is a prolific inventor and engineer, having been issued more than forty U.S. patents.  Volpi focused much of his work over his career in various aspects of wireless communications and navigation technologies.  As an engineer at Texas Instruments, and later Raytheon, he worked extensively on developing modern radar technologies, including overseeing the hardware design for long range navigation (LORAN) systems.  He also was instrumental in developing advances in global positioning satellite (GPS) systems and in cellular technology.  His work in cellular technology included ground breaking achievements with smart phone antennas.  Volpi was awarded the prestigious Tech Titans Chief Technology Officer of the Year in 2012.

14.     In 2000, Volpi became the Chief Technology Officer for Incucomm, Inc., a business incubator located in North Texas.  As CTO, Volpi worked with over 100 startups, guiding young technology companies through their launches and growth.  One of the technology startups with which Volpi worked was Veroscan, Inc ("Veroscan").  Veroscan was started by a group of professionals, including Dr. Jimmy LaFerney, one of the co-inventors listed on the Asserted Patents, interested in tracking various types of items in hospitals and health care facilities, ranging from inventories of hospital supplies, to medical devices or implements used during surgical procedures.  It was through part of his work with Veroscan that Volpi conceived and reduced to practice a number of ideas

5

involving the use of radio frequency identification ("RFID") technology to track items, resulting in over 20 patents, including the Asserted Patents.[1]  While Volpi worked specifically on applying RFID technology within the medical and health care industry, he also recognized the importance and utility of his inventions in the broader field of supply chain management.

15.    Veroscan developed RFID technologies, but it was never successfully made, sold or offered for sale any products.  Indeed, as has been the case with many small technology startup companies, Veroscan was ahead of its time in terms of developing products for which their commercial markets had not yet matured.  As a result, in 2010, Veroscan finally ceased its research and development activities, and instead focused itself on maintaining and continuing to build its portfolio of patented RFID technology.   Around that same time, Veroscan was reorganized and became Medical IP Holdings, LP.  Later, acknowledging that the patented technologies applied to the entire scope of supply chain management and were not limited just to medical applications, Medical IP Holdings changed its name to Lone Star SCM Systems, LP.

**B. RFID Technology**

16.    RFID technology is at the center of the Asserted Patents and the Accused Products here, and in particular, RFID readers with expanded tag reading capabilities. RFID uses electromagnetic fields to identify and track tags attached to objects.  A RFID tag consists of a tiny radio transponder:  a radio receiver and transmitter. When triggered by an electromagnetic interrogation pulse from a RFID reader, the tag transmits digital

---

[1] In addition to Mr. Volpi, Jimmy D. Laferney and William C. Montgomery also assisted in developing some of the inventions contained in the Asserted Patents, and each is also named as a co-inventor on each patent.

data back to the reader.  RFID tags are used in many industries.  For example, a RFID tag can be used to track inventory goods; a RFID tag attached to an automobile during production can be used to track its progress through the assembly line; RFID-tagged pharmaceuticals can be tracked through warehouses; and implanting RFID microchips in livestock and pets enables positive identification of animals.

17.    RFID readers generally fall within two types, mobile or portable readers (typically handheld) and fixed or stationary readers.  The mobile readers may be used, for example, by a warehouse employee to track inventory data as the worker moves throughout the warehouse.  On the other hand, a fixed or stationary reader may be installed at a specified place so that information can be tracked as tagged items move past that location.  Key features for all RFID readers include an antenna and a control and processing mechanism that allows the reader to receive and process a signal from a RFID tag attached to an item.

18.     Generally, RFID tags include a microchip that stores and processes information, and modulates and demodulates radio-frequency (RF) signals.

19.    The RFID tag receives a message from a reader and responds with its identification and other information.  This may be as simple as a unique tag identifier, or may contain other product-related information such as a stock number, lot or batch number, production date, or other specific information.  Since tags can be programmed with a unique identifier, the RFID system can discriminate among several tags that might be within the range of the RFID reader and read them simultaneously.

20.    "Bulk reading" is a strategy for interrogating multiple tags at the same time. A group of tagged items are read completely from one single reader position at one time.

7

Bulk reading is a possible use of HF ("High Frequency") (ISO 18000-3), UHF ("Ultra-High Frequency") (ISO 18000-6) and SHF ("Super High Frequency") (ISO 18000-4) RFID tags.  A group of tags has to be illuminated by the interrogating signal just like a single tag.  However, if any of the tags are shielded by other tags, they might not be sufficiently illuminated to return a sufficient response.

21.     The inventions developed by Volpi added features for RFID readers  such as position sensors, multiscan, coherent signal processing, or a user interface, including a touchpad and display.

22.     In 2014, the world RFID market was worth $8.89 billion, up from $7.77 billion in 2013 and $6.96 billion in 2012.  These figures include tags, readers, and software/services for RFID cards, labels, fobs, and all other form factors.  The market value is expected to rise from $12.08 billion in 2020 to $16.23 billion by 2029.

**C.  Asserted Patents**

1.  <u>U.S. Patent 7,557,711</u>

23.     On July 7, 2009, the U.S. Patent and Trademark Office (USPTO) issued the '711 Patent entitled "Interrogator and Interrogation System Employing the Same" after a full and exhaustive examination.  A copy of the '711 Patent is attached hereto as Exhibit "A" and is incorporated herein by reference.  The '711 Patent was originally assigned to Veroscan, which later assigned the patent to Medical IP Holdings, now known as Lone Star SCM Systems.  The '711 Patent claims priority back to application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

24.     The '711 Patent is generally directed to an interrogation system and , methods of discerning RFID objects, and an interrogation system employing the same.

The interrogation system includes a sensing subsystem configured to provide a signal having a signature representing a presence of a RFID object. The interrogation system also includes a control and processing subsystem configured to discern a presence of a RFID object from the signal and a position sensor configured to provide a location of the RFID object.

25.     The '711 Patent contains 20 claims, including 2 independent claims and 18 dependent claims. Among these is claim 1, which states:

> An interrogation system, comprising:
>
> a sensing subsystem configured to provide a signal having a signature representing a presence of a radio frequency identification (RFID) object;
>
> a control and processing subsystem configured to discern a presence of said RFID object from said signal; and
>
> a single position sensor configured to provide a location of said RFID object in accordance with a movement of said position sensor with respect to said RFID object.

26.     In addition, claim 3 states:

> The interrogation system as recited in claim 1 further comprising at least one antenna configured to cooperate with said sensing subsystem to provide said signal having said signature representing said presence of said RFID object.

27.     Further, claim 5 recites:

> The interrogation system as recited in claim 1 further comprising an antenna configured to cooperate with said sensing subsystem to provide said signal having said signature representing said presence of said RFID object, wherein at least one of said sensing subsystem, said control and processing subsystem, said position sensor and said antenna assembly is located in a portable interrogator.

28.     Also, claim 6 states:

> The interrogation system as recited in claim 1 wherein said control and processing subsystem is configured to employ multiscan, coherent signal processing.

29.     Claim 8 further provides:

> The interrogation system as recited in claim 1 wherein said control and processing subsystem is located in a computer system in communication with said sensing subsystem.

30.     Moreover, claim 15 states:

> The interrogation system as recited in claim 1 further comprising another sensing subsystem configured to provide a signal having a signature representing a presence of an object.

2.   U.S. Patent No. 9,646,182

31.     On May 9, 2017, the USPTO issued the '182 Patent entitled "Interrogator and Interrogation System Employing the Same" after a full and exhaustive examination. A copy of the '182 Patent is attached hereto as Exhibit "B" and is incorporated herein by reference.  The '182 Patent was originally assigned to Veroscan, which later assigned the patent to Medical IP Holdings, now known as Lone Star SCM Systems.  The '182 Patent claims priority back to application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

32.     The '182 Patent is generally directed to an interrogator having an antenna designed to receive first and second signals from first and second RFID objects.  The interrogator also includes a control and processing subsystem configured to discern RFID objects from the first and second signals as the antenna moves with respect to the objects.

10

33.     The '182 Patent contains 22 claims, of which 2 claims are independent and 20 are dependent.  Among these is claim 1, which states:

>        An interrogator, comprising:
>        an antenna configured to receive a first signal and a second signal from a first object and a second object, respectively, in close unobstructed proximity; and
>
>        a control and processing subsystem configured to discern a presence of said first object and said second object from said first signal and said second signal, respectively, as said antenna moves with respect to said first object and said second object.

34.     The '182 Patent also includes claims 3 and 4, which state:

>        3. The interrogator as recited in claim 1 further comprising a sensing subsystem configured to provide said first signal and said second signal having a signature representing said first object and said second object, respectively, from said antenna to said control and processing subsystem.
>
>        4. The interrogator as recited in claim 3 wherein said first object is a first radio frequency identification (RFID) object, said second object is a second RFID object and said sensing subsystem includes a RFID sensing subsystem configured to provide said first signal and said second signal having a signature representing said first RFID object and said second RFID object, respectively, to said control and processing subsystem to discern a presence of said first RFID object and said second RFID object therefrom without a radio frequency shield therebetween.

35.     Further, claim 6 states:

>        The interrogator as recited in claim 1 wherein said control and processing subsystem is configured to employ multiscan, coherent signal processing.

36.     Also, claims 10 and 11 state:

>        10.  The interrogator as recited in claim 1 further comprising a user interface.

11.  The interrogator as recited in claim 10 wherein said user interface comprises a touchpad, display and alarms.

37.    Moreover, claim 15 provides:

The interrogator as recited in claim 1 further comprising another antenna tuned to a different frequency than said antenna.

38.    And, claim 16 adds:

The interrogator as recited in claim 1 wherein said control and processing subsystem is configured to provide a location of said first object and said second object.

3.  U.S. Patent No. 9,996,717

39.    On June 12, 2018, the USPTO issued the '717 Patent entitled "Interrogator and Interrogation System Employing the Same" after a full and exhaustive examination. A copy of the '717 Patent is attached hereto as Exhibit "C" and is incorporated herein by reference.  The '717 Patent was assigned to Medical IP Holdings, now known as Lone Star SCM Systems.  The '717 Patent claims priority back to application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

40.    The '717 Patent is generally directed to an interrogation system having an antenna designed to receive first and second signals from first and second objects.  The interrogation system also includes a control and processing subsystem configured to discern a presence of the first and second objects from the first and second signals, as the objects move with respect to the antenna.

41.    The '717 Patent includes 2 independent claims and 18 dependent claims, for a total of 20 claims altogether.  Among these is claim 1:

An interrogation system, comprising:

12

an antenna configured to receive a first signal and a second signal from a fist object and a second object, respectively, in close unobstructed proximity; and

a control and processing subsystem configured to discern a presence of said first object and said second object from said first signal and said second signal, respectively, as said first object and said second object move with respect to said antenna.

42. In addition, claim 2 states:

The interrogation system as recited in claim 1 further comprising a position sensor configured to cooperate with said control and processing subsystem to provide a location of said first object and said second object.

43. Further, claims 3 and 4 recite:

3. The interrogation system as recited in claim 1 further comprising a sensing subsystem configured to provide said first signal and said second signal having a signature representing said first object and said second object, respectively, from said antenna to said control and processing subsystem.

4. The interrogation system as recited in claim 3 wherein said first object is a first radio frequency identification (RFID) object, said second object is a second RFID object and said sensing subsystem includes a RFID sensing subsystem configured to provide said first signal and said second signal having a signature representing said first RFID object and said second RFID object, respectively, to said control and processing subsystem to discern a presence of said first RFID object and said second RFID object therefrom without a radio frequency shield therebetween.

44. Moreover, claim 6 states:

The interrogation system as recited in claim 1 wherein said control and processing subsystem is configured to employ multiscan, coherent signal processing.

45. Claim 8 further provides:

4813-0032-6902v.2

The interrogation system as recited in claim 1 wherein said control and processing subsystem is configured to provide a location of said first object and said second object.

46.     Claims 9 and 10 provide:

9.  The interrogation system as recited in claim 1 further comprising a user interface.

10.    The interrogation system as recited in claim 9 wherein said user interface comprises a touchpad, display and alarms.

47.     Further, claim 14 states:

The interrogation system as recited in claim 1 further comprising another antenna tuned to a different frequency than said antenna.

4.   U.S. Patent No. 10,482,293

48.     On November 19, 2019, the USPTO issued the '293 Patent entitled "Interrogator and Interrogation System Employment the Same" after a full and exhaustive examination.   A copy of the '293 Patent is attached hereto as Exhibit "D" and is incorporated herein by reference.  The '293 Patent was assigned to Medical IP Holdings, now known as Lone Star SCM Systems.   The '293 Patent claims priority back to application No. 10/378,043, which was filed on March 3, 2003 and is now U.S. Patent No. 7,019,650.

49.     The '293 Patent is generally directed to an interrogator having an antenna designed to receive a signal from a RFID object.   The interrogator further includes a control and processing subsystem configured to discern the presence the RFID object from the signal.  Finally, the interrogator includes a user interface having a touchpad and a display embodied in a portable configuration.

50. The '293 Patent contains 22 claims, including 2 independent claims and 20 dependent claims.  Among these, claim 1 states:

> A portable interrogator, comprising:
> an antenna configured to receive a fist signal from a first object;
>
> a control and processing subsystem configured to discern a presence of said first object from said first signal;
>
> and a user interface including a touchpad and a display embodied in a portable configuration with said control and processing subsystem and said antenna.

51. Claim 7 says:

> The portable interrogator as recited in claim 6 wherein said another antenna is turned to a different frequency that said antenna.

52. Additionally, claim 10 provides:

> The portable interrogator as recited in claim 1 wherein said control and processing subsystem is configured to employ multiscan, coherent signal processing.

53. Claim 15 recites:

> The portable interrogator as recited in claim 1 wherein said control and processing subsystem is configured to provide a location of said first object.

54. And claim 16 says:

> The portable interrogator as recited in claim 1 wherein said user interface is embodied in a housing with said control and processing subsystem and/or said antenna.

**D.  Zebra Technologies' RFID Products**

55. Zebra is a global leader in providing Enterprise Asset Intelligence ("EAI") products and services in the Automatic Identification and Data Capture ("AIDC") industry. Zebra manufactures a broad range of AIDC products, including RFID readers.  Zebra's

products are used by various market segments including retail and e-commerce, transportation and logistics, manufacturing, healthcare, hospitality, warehouse and distribution, energy and utilities, government, public safety, education, and finance.

56.    As part of Zebra's Enterprise Visibility & Mobility ("EVM") business segment, Zebra manufactures products that include RFID features. Zebra's RFID line of products is focused on ultra-high frequency ("UHF") technology. Zebra's RFID products include fixed readers, RFID enabled mobile computers, and RFID sleds. These devices utilize passive UHF to provide high speed, non-line of the sight data capture from hundreds or thousands of the RFID tags in near real-time. Zebra's end-users take advantage of RFID technology to track high-value assets, monitor shipments, and drive increased retail sales through improved inventory accuracy. Zebra products also include RFID technologies to locate, track, manage, and optimize high-value assets, equipment, and even people. Certain of Zebra's products receive tag transmissions and provide location and motion calculations, database and system management functions, and asset visibility.

57.    Zebra's products ("Accused Products") that infringe one or more of Lone Star's patents include: RFD40 UHF RFID Sled, MC3300 RFID Series, RFD2000 UHF RFID Sled, RFD8500 RFID Sled, DS9900 Series Corded Hybrid Imager for Retail, DS9900 Series Corded Hybrid Imager for Labs, ATR7000, FX9600, FX7500, ST5500, AN510, AN520, AN440, AN480, AN650, and AN610.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,557,711

58.    Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

4813-0032-6902v.2

59.     Lone Star is the owner of all rights, title and interest to the '711 Patent.  The '711 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

60.     Zebra has had notice of the '711 Patent at least as early as the filing of this Complaint.

61.     Zebra has been and now is infringing at least Claim 1 of the '711 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell the Accused Products, singularly or in combinations with each other, that incorporate systems and methods according to the '711 Patent.  One example of the Accused Products that infringes the '711 Patent includes the Zebra MC33XX Series RFID products.

62.     For example, the Zebra MC3300 is an interrogation system.

63.     Further, the Zebra MC3300 has a sensing subsystem configured to provide a signal having a signature representing a presence of a RFID object.  In one embodiment, the sensing subsystem is comprised of an antenna connected to the RFID reader/writer module to provide a signal.  The antenna receives a signal from a RFID object, and the antenna processes that signal to convert it into a new signal of a different wavelength or power intensity before relaying that signal to the Atmel processor.  The new signal has an electronic signature that represents the presence of a RFID object.  In another embodiment, the antenna is separate from the sensing subsystem, but is nonetheless configured to cooperate with the sensing subsystem to provide a signal representing the presence of a RFID object. includes the RFID reader/writer module to provide a signal.

64.     The Zebra MC3300 has a control and processing subsystem configured to discern a presence of the RFID object from the signal.

65.     Also, the Zebra MC3300 contains a position sensor (an accelerometer communicatively coupled to an embedded microprocessor) that provides a location of a tagged object based on the movement of the reader with respect to the tagged object.

66.     The Accused Zebra Products satisfy all limitations of at least Claim 1 of the '711 Patent.  Zebra is thus liable for infringement of the '711 Patent pursuant to 35 U.S.C. § 271.

67.     In addition to infringing the '711 Patent directly, Zebra also induces infringement of the '711 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale Accused Products, which embody one or more of the inventions claimed in the '711 Patent.

68.     Zebra further contributorily infringes the '711 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '711 Patent.  The infringing Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

69.     As a result of Zebra's infringement of the '711 Patent, both direct and indirect, literal and/or through the doctrine of equivalents, Lone Star has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Zebra's infringing activities are enjoined by this Court.

70.     Unless a permanent injunction is issued enjoining Zebra and its agents, servants, employees, representatives, affiliates, and all others acting on or in active

concert therewith from infringing the '711 Patent, Lone Star will be greatly and irreparably harmed.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 9,646,182

71.     Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

72.     Lone Star is the owner of all rights, title and interest to the '182 Patent.  The '182 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

73.     Zebra has had notice of the '182 Patent at least as early as the filing of this Complaint.

74.     Zebra has been and now is infringing at least Claim 1 of the '182 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell the Accused Products, either singularly or in combination with each other, that incorporate systems and methods according to the '182 Patent.

75.     One example of the Accused Products that infringes the '182 Patent includes the Zebra MC33XX Series RFID products.

76.     For example, the Zebra MC3300 is an interrogator:

77.     Further, the Zebra MC3300 includes an antenna configured to receive a first signal and a second signal from a first object and a second object, respectively, in close unobstructed proximity.

78.     The Zebra MC3300 includes a control and processing subsystem (an embedded microprocessor communicatively coupled to the Analog Devices DSP

integrated circuit) configured to discern the presence of a first and second objects from first and second signals, respectively, as the antenna moves with respect to the first and second objects.

79.     The Accused Products satisfy all limitations of at least the '182 Patent Asserted Claims.  Zebra is thus liable for infringement of the '182 Patent pursuant to 35 U.S.C. § 271.

80.     In addition to infringing the '182 Patent directly, Zebra also induces infringement of the '182 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale the Accused Products, which embody one or more of the inventions claimed in the '182 Patent.

81.     Further, Zebra contributorily infringes the '182 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '182 Patent. The Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

82.     As a result of Zebra's infringement of the '182 Patent, both direct and indirect, literally and/or through the doctrine of equivalents, Lone Star has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Zebra's infringing activities are enjoined by this Court.

83.     Unless a permanent injunction is issued enjoining Zebra and its agents, servants, employees, representatives, affiliates, and all others acting on or in active

concert therewith from infringing the '182 Patent, Lone Star will be greatly and irreparably harmed.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 9,996,717

84.     Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

85.     Lone Star is the owner of all rights, title and interest to the '717 Patent.  The '717 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

86.     Zebra has had notice of the '717 Patent at least as early as the filing of this Complaint.

87.     Zebra has been and now is infringing at least Claim 1 of the '717 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell to the Accused Products, singularly and in combination with each other that incorporate systems and methods according to the '717 Patent.   An example of Zebra products that infringe the '717 Patent includes, but is not limited to, Zebra's fixed RFID Readers, such as, for example, the ATR7000 RTLS Reader.

88.     The Zebra ATR7000 RTLS Reader is an interrogation system:

89.     Further, the Zebra ART7000 RTLS Reader has an antenna configured to receive a first signal and a second signal from a first object and a second object, respectively, in close unobstructed proximity.

90.     Further, the Zebra ATR7000 has a TI AM3505AZCNA processor, and an Analog Devices DSP IC that serves as the control and processing subsystem configured

to discern a presence of first object and second objects from first and second signals, as the first and second object move with respect to the antenna.

91.     The Accused Zebra Products satisfy all limitations of at least the '717 Patent Asserted Claims.  Zebra is thus liable for infringement of the '717 Patent pursuant to 35 U.S.C. § 271.

92.      In addition to infringing the '717 Patent directly, Zebra also induces infringement of the '717 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale Accused Products, which embody one or more of the inventions claimed in the '717 Patent.

93.     Further, Zebra contributorily infringes the ''717 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '717 Patent. The Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

94.     As a result of Zebra's infringement of the '717 Patent, both direct and indirect, literally and/or through the doctrine of equivalents, Lone Star has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Zebra's infringing activities are enjoined by this Court.

95.     Unless a permanent injunction is issued enjoining Zebra and its agent, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '717 Patent, Lone Star will be greatly and irreparably harmed.

4813-0032-6902v.2

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 10,482,293

96.   Lone Star re-alleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

97.   Lone Star is the owner of all rights, title and interest to the '293 Patent.  The '293 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

98.   Zebra has had notice of the '293 Patent at least as early as the filing of this Complaint.

99.   Zebra has been and now is infringing at least Claim 1 of the '293 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to the Accused Products, singularly and in combination with each other that incorporate systems and methods according to the '293 Patent.   One example of the Accused Products that infringes the '293 Patent includes the Zebra MC33XX Series RFID products.

100.   For example, the Zebra MC3300 is a portable interrogator.

101.   Further, the Zebra MC3300 has an antenna configured to receive a first signal from a first object.

102.   The Zebra MC3300 has a control and processing subsystem (the embedded microprocessor) configured to discern a presence of the first object from the first signal.

103.   Also, the Zebra MC3300 has a user interface including a touchpad and a display. The touchpad and display are embodied in a portable configuration with the control and processing subsystem and antenna.

23

104.    The Accused Zebra Products satisfy all limitations of at least the '293 Patent Asserted Claims.  Zebra is thus liable for infringement of the '293 Patent pursuant to 35 U.S.C. § 271.

105.    In addition to infringing the '293 Patent directly, Zebra also induces infringement of the '293 Patent by knowingly taking affirmative acts through promotion of the Accused Products to induce others to make, use, sell, and/or offer for sale the Accused Products, which embody one or more of the inventions claimed in the '293 Patent.

106.    Further, Zebra contributorily infringes the '293 Patent by offering to sell and selling the Accused Products, knowing them to be especially made or especially adapted for practicing one or more of the inventions claimed in the '293 Patent. The Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use.

107.    As a result of Zebra's infringement of the '293 Patent, both direct and indirect, literally and/or through the doctrine of equivalents, Lone Star has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Zebra's infringing activities are enjoined by this Court.

108.    Unless a permanent injunction is issued enjoining Zebra and its agent, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '293 Patent, Lone Star will be greatly and irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Lone Star respectfully requests that this Court enter:

A.      A judgment in favor of Lone Star that Zebra has infringed the '771, '182, '717 and '293 Patents;

B.      A permanent injunction enjoining Zebra and its officers, directors, agents, servants affiliates, employees, divisions, branches, subsidiaries, parents and all others acting in active concert therewith from infringing the '771, '182, '717 and '293 Patents;

C.      A judgment and order requiring Zebra to pay Lone Star its damages adequate to compensate for the infringement of the '711, '182, '717 and '293 Patents, but in no event less than a reasonable royalty for the use made of the inventions by Zebra, together with interest and costs as fixed by the court as provided under 35 U.S.C. § 284;

D.      Any and all other relief to which Lone Star may show itself to be entitled.

## DEMAND FOR JURY TRIAL

Lone Star, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated:                                                   Respectfully submitted,

By: /s/ *Steven N. Williams*
Steven N. Williams
Texas State Bar No. 21577625
swilliams@munsch.com
Winston O. Huff
Texas State Bar No. 24068745
whuff@munsch.com
William Zac Duffy
Texas State Bar No. 24059697
zduffy@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

James R. Ray, III
jray@munsch.com
TX State Bar No. 24079746
Connor Best
cbest@munsch.com
Texas State Bar No. 24097374

**MUNSCH HARDT KOPF & HARR, P.C.**
1717 West 6th Street, Suite 250
Austin, TX 78703-4777
(512) 391-6100 – Telephone
(512) 391-6149 – Facsimile


**ATTORNEYS FOR PLAINTIFF LONE STAR SCM SYSTEMS, LTD.**